UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PIERRE JAMES, (R14787), | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17-cv-2351 |
| | ) | |
| v. | ) | Judge Sharon Johnson Coleman |
| | ) | |
| GHALIAH OBAISI, Executor of the Estate of Saleh Obaisi, M.D., and WEXFORD HEALTH SOURCES, INC., | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Pro se plaintiff Pierre James brings this lawsuit alleging an Eighth Amendment deliberate indifference claim and a state law intentional infliction of emotional distress claim based on the medical treatment for his knee injuries while he was incarcerated at Stateville Correctional Center.[1] Before the Court is defendants' motion for summary judgment under Federal Rule of Civil Procedure 56(a). For the reasons stated below, the Court grants defendants' motion in its entirety.

**Background**

The background facts are based on the parties' Northern District of Illinois Local Rule 56.1 statements that are undisputed and properly supported by the record. On March 30, 2015, James was watching a basketball game in the prison yard when the game got out of control and an individual crashed into his knee. On June 25, 2015, defendant Dr. Saleh Obaisi, Stateville's onsite Medical Director employed by defendant Wexford Health Services ("Wexford"), examined James after he had complained of knee pain. Dr. Obaisi's medical assessment was a sprain or tendonitis of

---

[1] The Court recruited counsel for James at the outset of these proceedings. In fact, James' second recruited counsel filed a response to the present summary judgment motion, after which James moved to fire counsel and strike the response. The Court granted James' motion on December 13, 2019, and allowed James to file a pro response to defendants' summary judgment and local rule statements, along with additional facts.

the left knee. At that time, Dr. Obaisi referred James to physical therapy. Three days later, on June 28, Dr. Obaisi reviewed James' lab results and concluded that James had rheumatoid arthritis. He prescribed Motrin for pain relief and physical therapy.

On October 15, Dr. Obaisi examined James due to his complaints about his left knee, after which Dr. Obaisi concluded that James had a muscle spasm. Dr. Obaisi prescribed a muscle relaxer for the spasm that resolved the pain. The next day, another Wexford physician noticed a golf ball sized mass behind James' left knee and requested an ultrasound. On October 19, Dr. Obaisi asked for a collegial review to discuss an ultrasound image study of James' knee to rule out the possibility that a popliteal cyst was causing James' knee pain. The review management doctor approved the ultrasound imaging study and the ultrasound was completed on November 3. Immediately after the ultrasound, Dr. Obaisi met with James and scheduled a follow-up appointment to discuss the radiologist's reading of the ultrasound study.

At the follow-up appointment on November 12, Dr. Obaisi explained to James that the ultrasound revealed a popliteal cyst and noted that there was only minimal swelling in the knee. Dr. Obaisi's medical assessment was that James had bursitis. His plan of treatment was an injection of Solu-Medrol (a steroid) into James' knee to reduce the cyst. Dr. Obaisi provided James a steroid injection that day. Later in November 2015, Dr. Obaisi saw James and concluded that his knee was the same, although he noted that the injection was working. Dr. Obaisi's plan of treatment was Motrin for pain relief and a knee sleeve, which he permitted James to use for one year.

Dr. Obaisi saw James again on December 29, at which time James reported that his pain was no better. After Dr. Obaisi examined James, Dr. Obaisi decided to discuss James' left knee problems with a review management doctor for a possible referral for offsite orthopedic treatment. At the collegial review in January 2016, the physicians agreed to an alternative treatment plan where

James would receive steroid injections onsite at Stateville and physical therapy. The physicians concluded that Dr. Obaisi could present James for consideration of an offsite consultation in the future, if necessary.

On March 20, 2016, Dr. Obaisi examined James for pain in his left knee and assessed bursitis and a left collateral ligament bruise related to the basketball injury. The doctor's plan of treatment was to perform blood work, discontinue Motrin, and prescribe another anti-inflammatory drug. On March 30, after receiving a positive rheumatoid factor blood test, Dr. Obaisi recommended additional physical therapy. In July, a Stateville staff physician saw James for a follow-up appointment. The physician completed a medical assessment and set forth a plan of treatment of continuing physical therapy. He also renewed James' anti-inflammatory drug prescription. That same day, Dr. Obaisi signed a medical special needs permit for James to have a low bunk for six months.

IDOC transferred James to Menard Correctional Center on September 16, 2016. Shortly thereafter, a nurse practitioner at Menard referred James for an MRI of his left knee. In October, a treating physician at Menard participated in a collegial review about a possible MRI. The reviewing physicians decided on an alternative treatment plan to monitor James' knee. IDOC then transferred James to Hill Correctional Center in October 2016, after which a physician ordered an x-ray of James' knee and a change in pain medication. The x-ray was completed in November and was normal. Hill health care providers continued a treatment plan of physical therapy.

In June 2017, a Hill physician requested an MRI, and on June 29, an MRI was conducted on James' right knee. The MRI revealed a tear of James' Anterior Cruciate Ligament ("ACL"). On August 24, an offsite hospital provided James with ACL reconstruction surgery.

**Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.Ed. 2d 202 (1986). When determining whether a genuine dispute exists, the Court views the evidence and draws all reasonable inferences in favor of the nonmoving party. *Id.* at 255; *McDaniel v. Progress Rail Locomotive, Inc.,* 940 F.3d 360, 367 (7th Cir. 2019). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (citation omitted).

**Discussion**

Construing his pro se summary judgment filings liberally, *Chronis v. United States*, 932 F.3d 544, 548 (7th Cir. 2019), James argues that Dr. Obaisi's failure to refer him for an MRI constitutes deliberate indifference under the Eighth Amendment. "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Wilson v. Adams*, 901 F.3d 816, 820 (7th Cir. 2018) (quotation omitted). To establish a deliberate indifference claim, a plaintiff must show that he suffered from an objectively serious medical condition and that the defendant was deliberately indifferent to that condition. *Goodloe v. Sood*, 947 F.3d 1026, 1030 (7th Cir. 2020); *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (en banc).

An objectively serious medical condition is one where a physician has diagnosed the condition as needing treatment or the need for treatment is obvious to a layperson. *Lockett v. Bonson*,

4

937 F.3d 1016, 1022–23 (7th Cir. 2019). Viewing the evidence in James' favor, there is sufficient evidence supporting his assertion that his left knee injuries constitute an objectively serious medical condition in light of the numerous IDOC medical care professionals diagnosing his condition and prescribing various treatments. The Court thus turns to whether James has set forth sufficient evidence creating a genuine issue of fact that Dr. Obaisi responded with deliberate indifference to his repeated complaints of knee pain.

In general, a prison official is deliberately indifferent if he knew or was aware of a substantial risk of harm to a prisoner's health, yet disregarded it. *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Goodloe*, 947 F.3d at 1030-31. More specifically, a prison official exhibits deliberate indifference when he, "having knowledge of a significant risk to inmate health or safety, administers 'blatantly inappropriate' medical treatment, acts in a manner contrary to the recommendation of specialists, or delays a prisoner's treatment for non-medical reasons, thereby exacerbating his pain and suffering." *Perez v. Fenoglio*, 792 F.3d 768, 777 (7th Cir. 2015) (internal citations omitted). Evidence of medical negligence does not establish deliberate indifference and courts give medical professionals significant deference when their professional judgment is called into question under the Eighth Amendment. *Knight v. Grossman*, 942 F.3d 336, 340-41 (7th Cir. 2019).

Looking to the totality of James' medical care in relation to his knee injuries, *see Petties*, 836 F.3d at 728, evidence in record shows that Dr. Obaisi and Stateville medical staff adopted a progressive course of treatment during the relevant time period from when James injured his knee in the prison yard in 2015 until IDOC transferred him to Menard in September 2016. Dr. Obaisi used his professional judgment when he employed several diagnostic approaches to assess James' condition, including blood tests and an ultrasound study. He prescribed treatment in the form of

medications, steroid injections, and physical therapy. That Dr. Obaisi did not order an MRI is of no moment because an "MRI is simply a diagnostic tool, and the decision to forego diagnostic tests is 'a classic example of a matter for medical judgment.'" *Pyles v. Fahim*, 771 F.3d 403, 411 (7th Cir. 2014) (citation omitted). In sum, James has failed to present evidence raising a triable issue of fact that Dr. Obaisi's decisions departed significantly from accepted professional norms when treating his knee injuries. *See Knight*, 942 F.3d at 341 ("The standard is not whether a reasonable medical professional would have made the same choice as Dr. [Obaisi], but instead whether 'no minimally competent professional' would have done so.") (citation omitted).

James also argues that Dr. Obaisi's failure to refer him for an MRI caused delay in the treatment of his knee injuries. Although inexplicable delays in treatment can be evidence of deliberate indifference, *Goodloe*, 947 F.3d at 1031, when a plaintiff argues defendant delayed his medical treatment, plaintiff must set forth "verifying medical evidence" that the delay, and not his underlying condition, caused him harm. *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 964 (7th Cir. 2019). James has failed to set forth any such evidence. The Court therefore grants defendants' summary judgment motion as to James' deliberate indifference claim.

On a final note, James does not address his intentional infliction of emotional distress claim in his response brief, thus abandoning it. *Citizens for Appropriate Rural Roads v. Foxx*, 815 F.3d 1068, 1078 (7th Cir. 2016). Nevertheless, there is no evidence in the record showing a triable issue of fact that Dr. Obaisi's conduct was extreme and outrageous, namely, that his conduct went "beyond all possible bounds of decency" and was "intolerable in a civilized community" as required under Illinois law. *Richards v. U.S. Steel,* 869 F.3d 557, 566 (7th Cir. 2017). The Court grants this aspect of defendants' summary judgment motion.

**Conclusion**

Based on the foregoing, the Court grants defendants' motion for summary judgment in its entirety. [90]. Civil case terminated.

IT IS SO ORDERED.

Date: 2/26/2020  Entered: _____

SHARON JOHNSON COLEMAN
United States District Court Judge

7